UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANNETTE P. JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:09cv0419 TCM |
| | ) |
| KUM AND GO, LC, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on a motion by Principal Life Insurance Company ("Principal") to dismiss Count IV of Plaintiff's Second Amended Complaint on the grounds that the Count – a state law claim for negligent or intentional interference with contractual relations and breach of the duty of good faith and fair dealing – is preempted by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001-1461. [Doc. 54]

## Background

As previously noted,[1] this case is about an alleged failure to provide Plaintiff with the required notices of the Consolidated Omnibus Budget Reconstruction Act ("COBRA"), 29 U.S.C. § 1161-1168, and with documents relevant to Plaintiff's employee welfare benefit plan as defined by ERISA. According to the allegations in the pending complaint, Plaintiff was employed by Kum and Go, LC ("K&G") as an assistant sales manager. (Compl.[2] ¶ 5.) K&G provided an employee benefit plan within the meaning of ERISA ("the Plan") and is

---

[1]See Mem. and Order of Nov. 12, 2009.

[2]All references to "Compl." are to the Second Amended Complaint.

the Plan's sponsor and administrator "and/or co-Plan [a]dministrator." (Id. ¶¶ 6, 9.) Plaintiff qualified for such ERISA benefits. (Id. ¶ 14.) Principal voluntarily "and/or by contract" assumed "all or some of the duties and liabilities of Plan administrator," "including the obligation to fully administer the [P]lan . . . ." (Id. ¶ 17.)

After April 7, 2007, Plaintiff was no longer able to work for K&G due to illness. (Id. ¶ 15.) On October 14, 2008, she was advised by Principal that she had suffered a COBRA qualifying event as described in ERISA. (Id. ¶ 24.) Principal concluded that Plaintiff was therefore not entitled to benefits under the Plan. (Id. ¶ 22.) The COBRA notice stated that Plaintiff must repay all costs for services rendered after April 30, 2007. (Id. ¶ 24.) Plaintiff alleges she did not receive a prior COBRA notice or an election to continue her healthcare coverage and that the notice she did receive failed to meet ERISA requirements. (Id. ¶¶ 25, 26.)

Principal then "commenced demanding repayment" from Plaintiff of health care services payments it had made on her behalf and also placed her account with a debt collector. (Id. ¶ 29.) In January 2009, K&G purportedly advised Principal that Principal had failed to timely issue COBRA notices. (Id. ¶ 34.) K&G instructed Principal to cease and desist "its claw back and reimbursement efforts." (Id.) Principal did not immediately cease such efforts. (Id. ¶ 35.) K&G then instructed Principal to repay all the monies it had collected from Plaintiff through those efforts. (Id. ¶ 37.)

In Count IV, Plaintiff alleges that Principal intentionally did not comply with K&G's instructions. (Id. ¶ 61.) Rather, Principal ignored the instructions and did not "police" providers to ensure that amounts paid to such providers by Plaintiff were promptly refunded

to her. (Id. ¶ 65.) "Because the defendants purport the Plan to be a wholly self-funded plan, the monies clawed belong to K&G" and "K&G had the sole right to determine, subject to Plaintiff's directive . . ., to whom its monies should be paid." (Id. ¶ 66.) Plaintiff will not enjoy a windfall if the monies are paid to her because she will have the obligation to resolve any billing questions with the healthcare providers. (Id. ¶ 67.)

In response to Principal's preemption argument, Plaintiff argues that her claim for negligent/intentional interference with a contract and breach of a duty of good faith and fair dealing is unrelated to a determination of the benefits under the Plan because the claim may be resolved without an examination of those benefits or of the Plan. Moreover, the Court need not determine the validity of the "claw backs" and need only determine whether Principal – when performing a ministerial act – carried out the "disregard" instructions by K&G. "Count IV is not based necessarily on entitlement to a plan benefit, but rather based on a later tardy determination by the plan administrator/fiduciary that once the post-employment benefit was given, it would not be revoked." (Pl. Mem. at 9.) For the reasons set forth below, the Court disagrees.

## Discussion

"ERISA . . . is a comprehensive statue that sets certain uniform standards and requirements for employee benefit plans," **Minnesota Chapter of Associated Builders and Contractors, Inc. v. Minnesota Dep't of Public Safety**, 267 F.3d 807, 810 (8th Cir. 2001) (interim quotations omitted), and was enacted to prevent "the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from

[those] funds, " **Massachusetts v. Morash,** 490 U.S. 107, 115 (1989). A provision in ERISA reflects this comprehensive scope.

> Except as provided in section (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003 (b) of this title.

29 U.S.C. § 1144(a). This preemption provision "'is conspicuous for its breath,'" **Ingersoll-Rand Co. v. McClendon**, 498 U.S. 133, 138 (1990) (quoting FMC Corp. v. Holliday, 498 U.S. 52, 58 (1990)), and "is not limited to 'state laws specifically designed to affect employee benefit plans,'" **Pilot Life Ins. Co. v. Dedeaux**, 481 U.S. 41, 47-48 (1987) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 98 (1983)). Rather, it is intended

> "to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government . . . , [and to prevent] the potential for conflict in substantive law . . . requiring the tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction."

**New York Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.**, 514 U.S. 645, 656-57 (1995) (quoting Ingersoll-Rand, 498 U.S. at 142) (alterations in original). "'[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted.'" **Travelers Cas. and Sur. Co. of Am. v. IADA Servs., Inc.**, 497 F.3d 862, 867 (8th Cir. 2007) (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 209 (2004)).

A two-part inquiry is required when considering the application of ERISA's preemption provision: "A law relates to a covered employee benefit plan for purposes of [§ 1144(a)] if it [1] has a connection with or [2] reference to such a plan." **California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A.**, 519 U.S. 316, 324 (1997) (quotations omitted). In determining whether there is a "connection" to an ERISA plan, the courts look to "both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive . . . as well as to the nature of the effect of the state law on ERISA plans." **Id.** at 325 (internal quotations omitted) (alteration in original). When analyzing the effect of a state law on an ERISA plan, courts examine:

> "[1] whether the state law negates an ERISA plan provision, [2] whether the state law affects relations between primary ERISA entities, [3] whether the state law impacts the structure of ERISA plans, [4] whether the state law impacts the administration of ERISA plans, [6] whether preemption of the state law is consistent with other ERISA provisions, and [7] whether the state law is an exercise of traditional state power."

**Minnesota Dep't of Public Safety**, 267 F.3d at 816 (quoting Arkansas Blue Cross & Blue Shield v. St. Mary's Hospital, Inc., 947 F.2d 1341, 1344-45 (8th Cir. 1991)) (alterations in original).

In determining whether a law has a "reference" to an employee benefit plan, courts may look to whether "a State's law acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation." **California Div. of Labor Standards Enforcement**, 519 U.S. at 324 (internal quotations omitted).

When conducting this two-part inquiry, courts have consistently opted for preemption in common law tort claims when the essence of the cause of action rests on the denial of

benefits. See **Id.** at 324-25 (finding preemption applied to a suit for various state tort and contract causes of action based on allegations that a plaintiff was fired so the employer could avoid making contributions to a pension fund); **Travelers**, 497 F.3d at 867-68 (finding that state common law causes of action for indemnification, contribution, and restitution were preempted by ERISA) ; **Parkman v. Prudential Ins. Co. of America**, 439 F.3d 767, 771-72 (8th Cir. 2006) (finding plaintiff's fraud claim asserting that the insurance company mishandled her claim by directly communicating with plaintiff after she had retained an attorney and by advising her that she did not need an attorney related to the administration of plan benefits and was therefore preempted by ERISA); **Thompson v. Gencare Health Sys., Inc.**, 202 F.3d 1072, 1073-74 (8th Cir. 2000) (finding a medical malpractice claim was preempted when it was based on allegations that plan refused to pay for recommended treatment).

State-law causes of action similar to the one alleged by Plaintiff in Count IV have been held by the First and Second Circuits Courts of Appeals to be preempted by ERISA. In **Paneccasio v. Unisource Worldwide, Inc**., 532 F.3d 101, 113-14 (2nd Cir. 2008), the court held that ERISA preemption applied to the plaintiff's state law claims for breach of covenant of good faith and fair dealing and for tortious interference with contract because the claims were based on the termination of benefits under an ERISA plan and specifically referred to that plan. "As to state common law claims, ERISA preempts those that seek 'to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and do not attempt to remedy any violations of a legal duty independent of ERISA.'" **Id.** at 114 (quoting Aetna Health, 542 U.S. at 214). In **McMahon v. Digitial Equip. Corp.**, 162 F.3d 28, 38 (1st

Cir. 1998), the court held that a plaintiff's action for interference with a business relationship was preempted because the action was dependent on her assertion that she was entitled to benefits under the terms of an employee benefit plan.  Cf. **Shea v. Esensten**, 208 F.3d 712, 717-19 (8th Cir. 2000) (finding no ERISA preemption in suit brought by widow of man who died of heart attack against physicians who said referral to cardiologist was not necessary – suit alleged violations of ethical duties imposed by state law – because the ERISA plan was peripheral to the ultimate issue and was only relevant because the plan created incentives designed to reduce referrals by physicians).

In the instant case, Plaintiff's state law claim in Count IV depends on the existence of the Plan.  She alleges Principal directed that her ERISA coverage cease and that the notice she received from Principal did not comply with ERISA.  K&G allegedly countermanded the directives from Principal, thereby allowing Plaintiff to receive ERISA benefits.  Principal then began attempting to collect monies paid for health care services rendered to Plaintiff. Plaintiff seeks to be paid all the monies Principal collected.  In essence, Plaintiff wants to be paid the benefits she believes she is owed under her ERISA Plan.  Regardless whether the Court is being asked to interpret the Plan or Plaintiff's rights thereunder, her cause of action has both a connection with, and reference to, the Plan.  Clearly, Count IV is preempted by ERISA.

Accordingly,

**IT IS HEREBY ORDERED** that Principal Life Insurance Company's Motion to Dismiss Count IV of the Second Amended Complaint is **GRANTED**.  [Doc. 54]

                    /s/ Thomas C. Mummert, III
                    THOMAS C. MUMMERT, III
                    UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of April, 2010.